IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:23-CV-00303-KDB

| | |
|---|---|
| TERESA B. SMITH, | |
| Plaintiff, | |
| v. | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**THIS MATTER** is before the Court on Plaintiff Teresa B. Smith's Complaint (Doc. No. 1), Plaintiff's Opening Brief (Doc. No. 5), Defendant Commissioner's Brief (Doc. No. 6), and Plaintiff's Reply Brief (Doc. No. 7). Smith seeks judicial review of an unfavorable administrative decision denying her application for disability benefits under the Social Security Act. The Court has carefully considered this motion, the parties' briefs, the administrative record, and the applicable legal authority. While the Court affirms the ALJ decision on several disputed issues, the Court finds that it must **REMAND** this matter for further proceedings to obtain additional information from the consultative examiner brought in to evaluate the Plaintiff.

## I. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020).

> The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual

1

> findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1151-52, 203 L.Ed.2d 504 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[1] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Accordingly, this Court does not review a final decision of the Commissioner *de novo*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry*, 952 F.3d at 120 (internal citations omitted); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

---

[1] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not. *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction 'is so narrow that it is often very difficult for a court to decide upon which side of the line' evidence falls). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that 'scintilla is Latin for "whatever a judge wants it to mean."' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

2

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*. (internal quotation marks omitted); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, in all cases the Court must always ensure that proper legal standards are being followed.

## II. FACTS AND PROCEDURAL HISTORY

On July 14, 2016, Smith filed an application for a period of disability and disability insurance benefits, alleging that she had been disabled since April 8, 2016. (AR 24). Her application was denied on its first review and then again upon reconsideration. *Id*. After conducting two hearings, the Administrative Law Judge ("ALJ") denied Plaintiff's application in a decision dated March 28, 2019. (AR 24-33). The Appeals Council denied Smith's request for review and thus the ALJ's decision stands as the final decision of the Commissioner. (AR 9). Plaintiff timely sought judicial review of that decision under 42 U.S.C. § 405(g). (Doc. No. 1).

### 1. The Commissioner's Decision

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Smith was disabled under the law during the relevant period.[2] At step one, the ALJ determined that Plaintiff had not engaged in substantial activity since April 8, 2016. (AR 26).

At step two, the ALJ determined that Smith had medically determinable impairments that significantly limited her ability to perform basic work activities, specifically "Guillain-Barre syndrome and cervical degenerative disc disease." (AR 26). The ALJ determined that Smith's other impairments, including anxiety and depression, were non-severe based on the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1). (AR 27-28). That is, they caused no more than "mild" limitation in any functional areas, and Smith did not allege work-related limitations that were caused by any mental impairment. *Id.*

At step three, however, the ALJ decided that Smith's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). The ALJ specifically found that there were no listings dealing with Guillain-Barre syndrome. (AR 28). Also, the ALJ found that Smith's

---

[2] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but at step five the Commissioner must prove the claimant can perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

neurological symptoms of extremity pain, numbness, and weakness did not meet the criteria set forth under Listing 11.00 (neurological disorders) or Listing 14.00 (immune system disorder). *Id.*

Before proceeding to step four, the ALJ found that Smith had the following residual function capacity ("RFC"): "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to frequent climbing ladders, ropes, scaffolds, ramps or stairs. She can frequently stoop, crouch, kneel or crawl." (AR 28). The ALJ then reviewed Smith's testimony and the evidence and found that her determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 29). However, the ALJ found that Smith's statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with the medical history and medical evidence in the record. *Id.* The ALJ reviewed prior medical opinions, including the consultative examination and the opinions of the State agency consultants. (AR 29-32). He also explained how much weight was given to each report and the reasoning for assigning such weight. (AR 30-31).

At step four, the ALJ accepted the vocational expert's ("VE") testimony and found that Smith was able to perform her past relevant work ("PRW") as a heavy equipment operator and as an institutional superintendent. (AR 32). The ALJ listed the job of heavy equipment operator as medium, SVP 6 work, and the job of institutional superintendent as medium, SVP 7 work, as actually and generally performed. *Id.*

The ALJ did not address step five. The ALJ therefore found that Smith was not disabled under the Social Security Act from April 8, 2016, through the date of the decision. (AR 33).

### III. DISCUSSION

Plaintiff argues that the ALJ made several errors related to resolving allegedly conflicting evidence, whether Plaintiff's prior work was a "composite job," and fully developing the record. (See Doc. No. 5 at 7).

#### A. **The ALJ's Alleged Errors Related to Her PRW and RFC**

Smith argues that the ALJ did not meet the applicable standards for considering the Plaintiff's disability application when he (1) failed to resolve conflicts about whether Smith could perform her PRW, (2) did not consider whether Smith's PRW was a composite job, and (3) did not ask Smith about her anxiety, depression, and insomnia. *Id.* at 7-16. And, according to Plaintiff, these errors were made worse because of the ALJ's obligations to be more thorough with respect to an unrepresented claimant.

Smith first claims that the ALJ failed to clarify conflicts in the evidence. The primary conflict that Smith alleges is that, in her hearing, Smith said she had to lift "parts and stuff" that were more than fifty pounds, but not daily. (AR 44). However, her RFC qualifies her for medium work, which "involves lifting no more than 50 pounds at a time." 20 C.F.R. §§ 404.1567(c), 416.967(c). So, the Plaintiff argues that her testimony and RFC are inconsistent. Further, she alleges that this inconsistency needed to be resolved; otherwise, she could not perform her PRW as an institutional superintendent. (Doc. No. 5 at 10). In response, Defendant argues that the RFC was consistent with the ALJ's determination that Smith could perform her PRW as it was customarily (rather than actually) performed. (Doc. No. 6 at 10).

An ALJ may base his findings concerning a plaintiff's PRW either on the job as the plaintiff actually performed it or as the job is customarily performed as required by employers in the national economy. SSR 82-61, 1982 SSR LEXIS 31 (Jan. 1, 1982).

6

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, [she] should be found to be 'not disabled.'

*Id.*; *see Chavez v. Saul*, 2020 U.S. Dist. LEXIS 92323 (W.D.N.C. Apr. 28, 2020). Here, the ALJ based his denial decision on the position of institutional superintendent as it is customarily performed as required by employers in the national economy. In making the decision to qualify Smith's heavy equipment operator and institutional superintendent jobs as Smith's PRW, the ALJ relied on the testimony and answers to hypothetical questions from the vocational expert ("VE"), Dr. Sumpter. The VE defined the role of institutional superintendent at medium exertion. (AR 46).[3] When asked a hypothetical question that included Smith's RFC restrictions, the VE testified that such a person could perform the PRW as customarily performed. (AR 48). Therefore, there was substantial evidence, based on Smith's PRW as customarily rather than actually performed, that Plaintiff could perform her PRW (assuming the accuracy of the RFC).

Second, Smith argues that the ALJ did not ask sufficient questions to determine whether her PRW was a composite job. (Doc. No. 5 at 11). A claimant's past relevant work "may be a composite job if it takes multiple DOT occupations to locate the main duties of the [PRW] as described by the claimant." Social Security Administration Program Operations Manual System ("SSA POMS") DI 25005.020(B). If a job is determined to be a composite job, an ALJ may "find

---

[3] Plaintiff points to another potential conflict in the testimony of the VE. The VE erroneously labeled the institutional superintendent position as medium exertion. (AR 46). However, the position is defined by the <u>Dictionary of Occupational Titles</u> ("DOT") as light exertion. DOT 182.683-010. However, Defendants correctly argue that, based on her medium exertion RFC, Smith can perform light exertion as well as medium exertion. Thus, there is no conflict related to the defined "exertion" of the position.

the claimant capable of performing the composite job only if he or she can perform all parts of the job." *Id*. Additionally, "[a] composite job does not have a DOT counterpart, so [it is not] evaluate[ed] as part of step 4 considering work 'as generally performed in the national economy.'" *Id.* Smith testified that in her role as a service manager, she had to lift the back of a truck with a tractor and pick up "parts and stuff." (AR 44). The VE "did not find the title for what she said her job was" and classified it as an institutional (construction) superintendent (DOT 182.167-026). (AR 46).

Though the DOT description of the job does not include the duties of using a tractor to pick up "parts and stuff," this does not mean that the ALJ should have considered whether her PRW was a composite job. Smith's past work does not combine multiple *distinct* positions as defined under the DOT. *See Carothers v. Saul*, 2019 U.S. LEXIS 174696, at *10 (W.D.N.C. Oct. 8, 2019) (finding that the ALJ erred when he did not make findings about whether a position was a composite job even though it combined two distinct positions under the DOT with different duties and exertion levels). Additionally, the VE described the role using only the institutional superintendent DOT classification. *See Jones v. Colvin*, 2016 U.S. Dist. LEXIS 24959, at *13 (E.D. Va. Feb. 4, 2016) (remanding the case when the ALJ did not make findings about whether a position was a composite job after the VE had described one position as two different DOT classifications).

Smith also did not specify what portion of her past role was spent using a tractor to pick up "parts and stuff." *See Miles v. Astrue*, 2008 U.S. Dist. LEXIS 125000, at *16 (D.S.C. Nov. 25, 2008) (affirming the ALJ's decision that the claimant could perform her PRW as generally performed when the ALJ did not consider if a position was a composite job because the lighter DOT constituted the main duty of the Plaintiff's past work). Lastly, Smith did not demonstrate that

8

her duties as a service manager were distinct from those of an institutional superintendent. *See Morris v. Kijakazi*, 2023 U.S. Dist. LEXIS 208804, at *23 (D.N.M. Nov. 21, 2023) (finding that the Plaintiff did not perform a composite job simply because she performed additional duties to her managerial duties, and that she would need to demonstrate that her duties were distinct from the DOT classification). Therefore, the ALJ did not err when he did not consider whether Smith's service manager role was a composite job.

Third, Smith alleges that the ALJ erred when he did not ask her about her anxiety, depression, and insomnia. (Doc. No. 5 at 11). The Commissioner responds that Smith's mental limitations were non-severe and that she did not allege work limitations related to any mental condition. (Doc. No. 6 at 13). It is the claimant's burden to establish how any medically determinable impairments affect functioning. 20 C.F.R. § 416.912(c). However, Smith did not bring up concerns about how her anxiety, depression, and insomnia affected her functioning. (AR 41-70). Still, in cases such as Smith's where a claimant is unrepresented, "ALJs have a 'duty to assume a more active role in helping pro se claimants develop the record.'" *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996) (citing *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980) (overturned on other grounds). Nevertheless, ALJs are not required to discuss every piece of evidence when formulating an RFC. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dryer v. Barnhard*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).

The Court finds that the ALJ took Smith's mental conditions into consideration when he determined that her mental impairments caused no more than a "mild" limitation in any functional areas and were non-severe. (AR 5). When determining this, the ALJ drew on evidence from the consultative exam, Function Report, and Third Party Report. *Id.* When formulating the RFC, the ALJ did not consider Smith's mental conditions. (AR 5-9). Those sources revealed only relatively

9

brief references from her doctors about Smith's mental conditions, which did not constitute a substantial portion of the record. Instead, the record focused on her physical impairments that stemmed from Guillain-Barre syndrome and cervical degenerative disc disease. In sum, while the ALJ considered the portion of the record that related to her mental impairments when he determined that the mental conditions were non-severe, he did not have to refer to that limited portion of the record when formulating Smith's RFC. *See Thomas v. Berryhill* 916 F.3d 307, 312 (4th Cir. 2019) (faulting the ALJ for not discussing a "substantial portion" of the record but acknowledging that there is no rigid requirement that the ALJ refer to every piece of evidence). Therefore, even in light of the ALJ's heightened duty to *pro se* claimants, the ALJ did not err when he did not use Smith's alleged mental impairments in formulating her RFC.

### B. The ALJ's Development of the Record Related to the Consultive Exam

Finally, Smith argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not fully develop the record with respect to the consultative exam. When evidence is incomplete, insufficient, or inconsistent, the ALJ has a choice between recontacting a medical source for clarification, requesting additional existing evidence, asking the claimant to undergo a consultative examination, or asking the claimant or others for more information. 20 C.F.R. § 404.1520b(b)(2)(i)-(iv). Additionally, "when an administratively ordered consultative examiner's opinion contains what ought to be an easily clarified ambiguity on a key issue, it logically follows that an ALJ must engage in a simple § 404.1520b(b)(2) inquiry." *Oakes v. Kijakazi*, 70 F.4th 207, 214 (4th Cir. 2023).

In *Oakes*, the Fourth Circuit reversed a District Court decision affirming the Commissioner's denial of a disability application and remanded the case for additional questioning of the consultative examiner. The court found that to the extent the examiner's recommendation

10

was ambiguous, the medical record was incomplete and the ALJ should have "take[n] additional actions" to seek clarification. 20 C.F.R. § 404.1520b(b). *Id*. at 213-14. In so holding, the court noted that the lack of other medical evidence was the "reason that the ALJ ordered a consultative examination … in the first place" and "here, it cannot be said that the insufficiency in the record could not be resolved or that the ALJ reasonably endeavored to obtain additional evidence to remedy it. *Id*. at 214 (referring to the ALJ's determination as "woefully premature." The court concluded that scheduling "such an examination only to immediately dismiss its results on easily curable grounds amounts to a half-hearted execution of regulations intended to discern the truth of one's claim… it cannot be said that an ALJ applies sound legal principles by simply giving up." *Id*.

Here, as in *Oakes*, the ALJ ordered a consultative exam but then dismissed the consultative examiner's conclusion that Smith's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, pushing and pulling heavy objects, as well as the ability to hear or speak, appeared to be mildly to moderately impaired." (AR 9). The ALJ found that the evaluation was too "vague and not in specific function-by-function terms consistent with Agency rules and regulations." *Id.* Following *Oakes*, the Court finds that the ALJ failed to make a § 404.1520b(b)(2) inquiry when he attributed less weight to Dr. Burgess's opinion solely because of its vagueness. This was an easily clarified ambiguity and therefore the ALJ's RFC determination was premature and warrants remand.

In ordering remand pursuant to sentence four of 42 U.S.C § 405(g), the Court does not forecast a decision on the merits of Plaintiff's reconsidered application for disability benefits. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a

sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299, 113 S. Ct. 2625, 125 L.Ed.2d 239 (1993) (alteration in original) (emphasis omitted) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 624-25, 110 S. Ct. 2658, 110 L.Ed.2d 563 (1990)).

## V. ORDER

**NOW THEREFORE IT IS ORDERED** that the Commissioner's decision is **REVERSED**. This matter is **REMANDED** for a new hearing pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED ADJUDGED AND DECREED.**

Signed: June 24, 2024

Kenneth D. Bell
United States District Judge